IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


CALVIN JEROME STOVER                                                    PLAINTIFF

          v.                              Civil No.   13-5018

CAPTAIN CHRIS SPARKS,
Benton County Detention Center                                        DEFENDANT

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights case filed by the Plaintiff, Calvin J. Stover, pursuant to 42 U.S.C.

§ 1983.  He proceeds *pro se* and *in forma pauperis.*

Defendant has filed a motion to dismiss (Doc. 8).  Plaintiff has not responded to the

motion.  The time to respond has passed.  Plaintiff did, however, file a motion to amend the

complaint (Doc. 16).  The motion will be considered in connection with the motion to dismiss.

**1.  Background**

At the times relevant to this complaint, Plaintiff was incarcerated in the Benton County

Detention Center (BCDC).  Plaintiff is now housed in the Delta Regional Unit of the Arkansas

Department of Correction located in Dermott, Arkansas.

Plaintiff alleges that on October 26, 2012, November 11th, November 15th, November

27th, and December 7th, his mail was delivered to him opened.  On four of these occasions (all

except November 27th) legal mail from his attorney was opened. Plaintiff alleges that on

December 7th, the deputy distributing mail, Deputy Massey, attempted to conceal the fact that

Plaintiff's mail had been opened.  Plaintiff also asserts that one of these letters was dated

November 15th and was not given to him until December 7th.

-1-

According to Plaintiff, jail staff on one occasion opened his mail, repackaged it, and mailed it back to his wife. Plaintiff states that the mail was legal mail. He also asserts that seven letters he sent to his attorney were not received. In response to this grievance, Plaintiff was advised the mail log showed seven letters left the facility addressed to Herb Southern's law firm.

Plaintiff also describes the erratic electronic grievance system that is now being utilized at the BCDC. He indicates the system is down for a period of time on a nearly daily basis and on at least one occasion was down for five days. He indicates that the deputies have been instructed to not print any grievances. For this reason, he states he has been unable to submit to the Court a copy of all the grievances he submitted to the jail. Additionally, Plaintiff alleges he has sent several grievances to Defendant and has not received any responses.

Defendant reads this as being a separate claim by the Plaintiff based on the inadequacies of the grievance procedure. However, Plaintiff's description of the current procedures and the problems with it are in the portion of the complaint where Plaintiff was asked to state whether he had exhausted the grievance procedure. For purposes of this motion, we will liberally construe the complaint as asserting such a cause of action.

Finally, Plaintiff alleges that jail personnel at the BCDC were refusing to complete his certificate regarding his inmate account that is part of the *in forma pauperis* application. He indicates he attempted for nearly a month to get the form completed.

As relief, Plaintiff would like to see the jail stop the practice of discarding the envelope of each letter. He also states he would like to see the jail stop using the practice of withholding mail as a means of control or discipline. He states that every piece of mail should be delivered on the day it is received by the jail.

AO72A
(Rev. 8/82)

Plaintiff has filed a motion to amend (Doc. 16) the complaint.  He seeks to add "1st amendment, 4th amendment, and 6th amendment rights violations."  No further detail is given regarding these claims.

### 2.  Applicable Standard

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'"  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009)(quoting Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009)).

"The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'"  Braden, 588 F.3d at 594 (quoting Iqbal, 556 U.S. at 664).  The standard does "not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation," or reasonable inference, that the "defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 663; see also Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004)(While pro se complaints are liberally construed, they must allege sufficient facts to support the claims.).

### 3.  Discussion

Defendant maintains that Plaintiff has made no allegations that could possibly give rise to county liability in this case.  They assert that the Plaintiff has not alleged that a county policy or custom was the moving force behind an underlying violation.  For this reason, they ask that all official capacity claims be dismissed.  Further, they assert the Plaintiff cannot recover compensatory damages because he suffered no physical injury.

-3-

### A.  Interference with Mail

"Inmates have a First Amendment right of free speech to send and receive mail.  Hudson

v. Palmer, 468 U.S. 517, 547 (1984).   "The fact of confinement and the needs of the penal

institution impose limitations on constitutional rights, including those derived from the First

Amendment."  Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 125 (1977).

"Prisoners' First Amendment rights encompass the right to be free from certain

interference with mail correspondence."  Davis v. Norris, 249 F.3d 800, 801 (8th Cir. 2001).

"Interference with legal mail implicates a prison inmate's right to access to the courts and free

speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." Davis

v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).   "A prison policy that obstructs privileged inmate

mail can violate inmates' right of access to the courts."  Weiler v. Purkett, 137 F.3d 1047, 1051

(8th Cir. 1998).

Restrictions on this First Amendment right are valid "only if [they are] (1) reasonably

related to legitimate penological interests,"such as security, order, or rehabilitation and are (2)

no greater than necessary to the protection of the governmental interest involved.  Turner v.

Safely, 482 U.S. 78, 89 (1987).  In balancing the competing interests, courts afford greater

protection to legal mail than non-legal mail and greater protection to outgoing mail than to

incoming mail.  See Thornburgh v. Abbott, 490 U.S. 401, 413 (1989).

"[M]ail from an attorney to an inmate client cannot be opened for inspection outside the

inmate's presence."  Cody v. Weber, 256 F.3d 764, 768 (8th Cir. 2001); see also Thongvanh v.

Thalacker, 17 F.3d 256, 258-59 (8th Cir. 1994)(prison officials' duty to maintain security within

prison does not extend to reading inmates' legal mail).  However, "an isolated, inadvertent

instance of opening incoming confidential legal mail" will not support "a § 1983 damage action

-4-

unless there is evidence of improper motive or resulting interference with the inmate's right to counsel or access to the courts. Gardner v. Howard, 109 F.3d 427, 431 (8th Cir. 1997).

> The act of opening incoming mail does not injure an inmate's right to access to the courts. The policy that incoming confidential legal mail should be opened in inmates' presence instead serves the prophylactic purpose of assuring them that confidential attorney-client mail has not been improperly read in the guise of searching for contraband.

Id.

In this case, Plaintiff identifies several instances when he believes his mail was interfered with. He makes no argument that Captain Sparks was involved in the mail distribution process, was present on any of these occasions, or was in any other way directly responsible for the alleged constitutional violations. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985)(claim not cognizable under § 1983 because plaintiff did not allege defendant was personally involved in or had direct responsibility for incidents that injured him). There is simply no basis for an individual capacity claim against Captain Sparks.

An official capacity claim "is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claims are treated as claims against Benton County. See Murray v. Lene, 595 F.3d 868, 873 (8th Cir. 2010).

"A municipality can be liable under § 1983 only if a municipal policy or custom caused a plaintiff to be deprived of a federal right." Alexander v. Hedback, 718 F.3d 762, 766 (8th Cir. 2013)(citations omitted). "[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Plaintiff has not asserted that the alleged constitutional deprivations were caused by any policy, practice, or custom of Benton County.  This is fatal to his claim against Benton County.

### B.  Inadequate Grievance Procedure

While prisoners have a First Amendment right to "petition for redress of grievances under a prison's grievance procedure," Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010), such procedures do not create a liberty interest.  Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." Id.

Plaintiff has not identified a federal constitutional right that he was deprived of because of the alleged inadequacies in the grievance procedures.  He makes no argument that he was treated differently from other similarly situated prisoners, or that his grievances were ignored because of his exercise of his constitutional rights, or his ability to exercise any specific constitutional right was chilled by Defendant's actions.  Defendant is entitled to judgment in his favor on this claim.

### C.  Access to the Courts

"Inmates undeniably enjoy a constitutional right of access to the courts and the legal system." Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996)(citing Lewis v. Casey, 518 U.S. 343 (1996)); Bounds v. Smith, 430 U.S. 817 (1997)).  The right of access requires the provision of "prisoners with adequate law libraries or adequate assistance from persons trained in the law," Bounds, 430 U.S. at 828, to challenge their criminal charges, convictions, and sentences directly or collaterally or to challenge the conditions of their confinement through civil rights actions.

-6-

Casey, 518 U.S. at 351; see also Cody v. Weber, 256 F. 3d 764, 767-68 (8th Cir. 2001)("right of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it does not extend to the right to 'discover grievances' or to 'litigate effectively once in court'")(quoting Casey, 518 U.S. at 354-55); *Klinger v. Department of Corrections*, 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic).

In this case, Plaintiff alleges he had difficulty getting jail personnel to complete the certificate regarding his inmate account which is part of the *in forma pauperis* application. However, Plaintiff was able to file this case and submitted a completed *in forma pauperis* application. While the application was completed when Plaintiff was temporarily transferred to another jail, this alleged injury cannot form the basis of a denial of access to the courts claim. Plaintiff's case was filed well within the statute of limitations, he missed no deadlines established by the Court, and as is apparent from the docket sheet he has been able to submit other pleadings to the Court.  See e.g., Hartsfield v. Nichols, 511 F.3d 826, 833 ("Absent an articulation of how the alleged wrongful conduct actually blocked [Plaintiff's] access to filing a complaint, or caused a filed complaint to be deficient, [Plaintiff's] alleged injuries are merely speculative").

**4.  Conclusion**

For the reasons stated, I recommend that the motion to dismiss (Doc. 8) be granted and the case dismissed.

AO72A
(Rev. 8/82)

The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 9th day of August 2013.

/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-8-